UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

EMMANUEL ODUOR, *et al.*,

    *Plaintiffs*,

v.

ANTONY J. BLINKEN, *U.S. Secretary of State*,

    *Defendant.*

No. 1:23-cv-00908

**MEMORANDUM OPINION**

Emmanuel Oduor, an American citizen, has spent years trying to bring his sons, Christopher Isaac Ebuu and Joel Nelson Ikapel, both Kenyan nationals, to the United States on immigrant visas. The family members bring this action under the Administrative Procedure Act, 5 U.S.C. § 706, and the Mandamus Act, 28 U.S.C. § 1361, to compel the adjudication of Ebuu's and Ikapel's visa applications. Compl. at 27, Dkt. 1. Before the Court is Secretary of State Antony J. Blinken's Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Def.'s Mot. to Dismiss, Dkt. 6. For the reasons that follow, the Court will grant Secretary Blinken's motion and dismiss the petition.

**I.     BACKGROUND**[1]

    **A.     Statutory and Regulatory Background**

The Immigration and Nationality Act authorizes the issuance of visas to different categories of immigrants, including relatives of U.S. citizens or lawful permanent residents. 8

---

[1] On a motion to dismiss, the Court accepts the factual allegations in the complaint as true. *See Harris v. D.C. Water & Sewer Auth.*, 791 F.3d 65, 68 (D.C. Cir. 2015) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)).

U.S.C. § 1153(a). A U.S. citizen or lawful permanent resident initiates this process by filing a Form I-130, Petition for Alien Relative, with the United States Citizenship and Immigration Services (USCIS). 8 U.S.C. § 1154. After receiving such a petition, USCIS reviews the family-based petition and, upon approval, transfers the case to the Department of State's National Visa Center for pre-processing. Immigr'n Visa Process, Step 2, U.S. Dep't of State, https://perma.cc/X3W2-RZH4.

Once the petition is transferred, the National Visa Center mails the beneficiary a "Welcome Letter" and tells him how to apply for an immigrant visa. 9 Foreign Affs. Manual ("FAM") § 504.1-2(a)(1).[2] The applicant submits required fees, forms, and documents to the National Visa Center. *See id.* § 504.1-2(b). After a determination that it has received these submissions, the National Visa Center considers the applicant's case "documentarily complete." *Id*. The National Visa Center then works with the appropriate American embassy or consulate to schedule an interview. *See* 22 C.F.R. § 42.62; Immigr'n Visa Process, Step 9, U.S. Dep't of State, https://perma.cc/2RSD-BJZS. "[The National Visa Center] generally schedules appointments in the chronological order of the documentarily complete applicants." 9 FAM § 504.4-6. After the interview, the consular officer either issues or refuses the visa. *See* 22 C.F.R. § 42.81(a).

**B.      Factual Background**

On June 13, 2017, Oduor, a United States citizen,[3] filed Form I-130 Petitions for Alien Relative on behalf of his Kenyan sons, Ebuu and Ikapel. Compl. ¶¶ 55–58. USCIS approved the

---

[2] The Foreign Affairs Manual and the Foreign Affairs Handbooks are a "single, comprehensive, and authoritative source for the [State] Department's organization structures, policies, and procedures" provided to staff so they can "carry out their responsibilities in accordance with statutory, executive, and Department mandates." Foreign Affairs Manual, U.S. Dep't of State, https://perma.cc/P3RQ-ZEVJ.

[3] Oduor became a United States citizen on January 11, 2021. Compl. ¶ 55. The Court presumes that he was a lawful permanent resident at the time he filed the Form I-130 petitions.

petitions and transferred them to the National Visa Center for pre-processing. *Id.* ¶¶ 59–60. The plaintiffs submitted the requisite documentation and payments. *Id.* ¶¶ 60–66. Specifically, on June 23, 2020, the plaintiffs submitted an online immigrant visa application form (DS-260) with supporting documents for Ebuu, and on September 16, 2022, the plaintiffs submitted the same for Ikapel. *Id.* ¶¶ 61, 65. The National Visa Center declared that Ebuu's case was "documentarily qualified" on July 21, 2020, *id.* ¶ 62, and that Ikapel's case was "documentarily complete" on November 19, 2022, *id.* ¶ 66. Neither had been scheduled for an interview before a consular officer in Kenya at the time the complaint was filed. *Id.* ¶¶ 63, 66.

Oduor, Ebuu, and Ikapel filed this action on April 4, 2023 seeking declaratory and injunctive relief to compel the State Department to adjudicate Ebuu and Ikapel's cases under the Administrative Procedure Act, 5 U.S.C. § 706, and the Mandamus Act, 28 U.S.C. § 1361. *Id.* ¶¶ 98–124. Secretary Blinken moved to dismiss Plaintiff's complaint for failure to state a claim and lack of jurisdiction under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. *See* Def. Mot. to Dismiss at 1, Dkt. 6.

On February 14, 2024, the Secretary notified the Court that a consular officer had interviewed Ebuu and denied his application. Def. Notice of Suggestion of Mootness, Dkt. 15. Ikapel is still waiting for his interview to be scheduled. Joint Status Report, Dkt. 16.

## II.   LEGAL STANDARDS

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal law empowers federal district court judges to hear only certain kinds of cases, and the plaintiff bears the burden of establishing that his case falls within that limited jurisdiction. *Id.*

3

When deciding a Rule 12(b)(1) motion, the Court must "assume the truth of all material factual allegations in the complaint and construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged, and upon such facts determine jurisdictional questions." *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (internal quotation marks and citations omitted). A court "may undertake an independent investigation" that examines "facts developed in the record beyond the complaint" to assure itself of its own subject matter jurisdiction." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005) (internal quotation marks omitted). A court that lacks jurisdiction must dismiss the action. Fed. R. Civ. P. 12(b)(1), 12(h)(3).

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to move to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion, a complaint must contain factual matter sufficient to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A facially plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) does not amount to a specific probability requirement, but it does require "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint need not make "detailed factual allegations," but allegations that are merely a "formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted).

### III.    ANALYSIS

The plaintiffs' APA and Mandamus Act claims fail under Rules 12(b)(1) and 12(b)(6).

### A. Ebuu's Visa Application

After the motion to dismiss was filed, Ebuu appeared for his consular interview, and his application has since been terminated. Def. Notice of Suggestion of Mootness. "[The Court] of course lack[s] power under Article III to decide an issue when the question sought to be adjudicated has been mooted by subsequent developments." *Friends of Animals v. Bernhardt*, 961 F.3d 1197, 1203 (D.C. Cir. 2020) (internal quotation marks and citation omitted). There is no longer any delay in Ebuu's interview scheduling for this Court to adjudicate. Thus, to the extent the complaint seeks relief for Ebuu, those claims are moot. The only claims remaining in this action are Oduor and Ikapel's claims for relief with respect to Ikapel's visa application.

### B. Ikapel's Visa Application

Courts review claims of unreasonable delay in processing immigration petitions according to "the same [standard] under both § 706(1) of the APA and the Mandamus Act, 28 U.S.C. § 1361." *Skalka v. Kelly*, 246 F.Supp.3d 147, 152 (D.D.C. 2017). Under the APA, a "reviewing court shall . . . compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). From this text emerges two requirements for an unreasonable-delay claim. First, a "claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Second, the Court must evaluate "whether the agency's delay is so egregious as to warrant mandamus." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (cleaned up).

Like others in this district, the Court assumes, without deciding, that Secretary Blinken has a mandatory legal duty to act on Ikapel's visa application. *See, e.g., Taj v. Dep't of State*, 2022

WL 17250302, at *5 (D.D.C. 2022).[4]  But the plaintiffs' claims fail because they cannot show that Secretary Blinken has unreasonably delayed action on Ikapel's visa application.[5]  Accordingly, the Court will grant the Secretary's motion to dismiss.

To evaluate whether an agency's delay is unreasonable, courts in this district apply the six-factor test set forth in *Telecommunications Research & Action Center (TRAC) v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984).  The *TRAC* factors are as follows:

(1) the time agencies take to make decisions must be governed by a rule of reason;

(2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;

---

[4] To warrant mandamus, a plaintiff must initially show that the government has a "crystal-clear" duty to act, *In re Ctr. for Biological Diversity*, 53 F.4th 665, 670 (D.C. Cir. 2022), and has "no discretion whatever." *Norton*, 542 U.S. at 64 (citation omitted).  "Absent a violation of a clear duty, this court is powerless to grant mandamus." *In re Ctr. for Biological Diversity*, 53 F.4th at 670; *see also Norton*, 542 U.S. at 63 n. 1, 64.  By regulation, the State Department has a mandatory duty to act once an I-130 applicant has been interviewed and the petition has been approved and forwarded to the appropriate embassy.  22 C.F.R. § 42.81(a).  An applicant is considered to have actually "made or filed a visa application only when she personally appears before a consular officer for an interview," *Taj*, 2022 WL 17250302, at *5 (citing 22 C.F.R § 40.1(1)(2)), which Ikapel has not yet done.

The D.C. Circuit has held, however, that the APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it within a reasonable time and authorizes a reviewing court to compel agency action unlawfully withheld or unreasonably delayed." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099–100 (D.C. Cir. 2003) (cleaned up); *see Khazaei v. Blinken*, 2023 WL 6065095, at *6 (D.D.C. 2023). The year after *Mashpee* was decided, the Supreme Court held that the only "agency action that can be compelled . . . is action legally *required*" and that a court may order only a "precise, definite act about which an official had no discretion whatsoever." *Norton*, 542 U.S. at 63. Following *Norton*, a court may compel agency action only "when an agency is compelled by law to act within a certain time period," such as when a statute requires an agency to act within 6 months of the statute's enactment.  *Id.* at 65.  But consistent with *Mashpee*, here the Court assumes that the State Department has a required legal duty to act in a timely fashion on Ikapel's visa application.  *See Pourabdollah v. Blinken*, 2024 WL 474523, at *6 n. 5 (D.D.C. 2024).

[5] Both Oduor and Ikapel have standing to seek adjudication of Ikapel's application. *See Ahmadi v. Scharpf*, 2024 WL 551542, at *3 (D.D.C. 2024).

(3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;

(4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;

(5) the court should also take into account the nature and extent of the interests prejudiced by delay; and

(6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re United Mine Workers of Am. Int'l Union*, 190 F.3d 545, 549 (D.C. Cir. 1999) (internal quotation marks omitted) (quoting *TRAC*, 750 F.2d at 80). The *TRAC* factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d at 855 (quoting *TRAC*, 750 F.2d at 80). Here, the balance of the factors favors Secretary Blinken.

      i.    *TRAC* Factors 1 and 2

The first two *TRAC* factors concern the length of the delay. The factors are often considered together, *see, e.g.*, *Tate v. Pompeo*, 513 F.Supp.3d 132, 148 (D.D.C. 2021), *appeal dismissed*, No. 21-5068, 2021 WL 3713559 (D.C. Cir. July 22, 2021), and the first *TRAC* factor is considered the "most important" of the six, *In re Core Commc'ns, Inc.*, 531 F.3d at 855. In analyzing these factors, the Court must determine "whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale." *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F.Supp.3d 295, 300 (D.D.C. 2014).

Both of these factors favor Secretary Blinken. "Congress has given the agencies wide discretion in the area of immigration processing," *Skalka*, 246 F.Supp.3d at 153–54, and "[a]bsent a congressionally supplied yardstick, courts typically turn to case law as a guide" to determine the reasonableness of a visa application delay, *Sarlak v. Pompeo*, 2020 WL 3082018, at *6 (D.D.C. 2020). "District courts have generally found that immigration delays in excess of five, six, seven

years are unreasonable, while those between three to five years are often not unreasonable." *Rahman v. Blinken*, 2023 WL 196428, at *4 (D.D.C. 2023) (cleaned up).  Ikapel submitted his application documentation in September 2022 and received a "documentarily complete" determination in November 2022, approximately five months before the complaint was filed in April 2023.  Compl. ¶¶ 65–66.  Against the backdrop of other delays found reasonable in this Court, a five-month delay with no scheduled interview is not unreasonable.  *See, e.g.*, *Tekle v. Blinken*, 2022 WL 1288437, * 3 (D.D.C. 2022) (finding a 23-month delay between "the last agency action" and the time of filing "not unreasonable); *Memon v. Blinken*, 2023 WL 1438396, *1–3 (D.D.C. 2023) (determining there was no unreasonable delay, where there was a 28-month delay between the submission of documentation and the time of filing with no scheduled interview).

Further, the government's process for scheduling interviews plainly follows an "identifiable rationale." *Ctr. for Sci. in the Pub. Interest*, 74 F.Supp.3d at 300.  The National Visa Center does not schedule interviews until after the "documentarily complete" determination is made.  9 FAM § 504.4-6.  From there, the government uses a chronological method to schedule interviews.  Def. Mot. to Dismiss at 19.  "[T]his first-in, first-out method of adjudication satisfies the rule-of-reason inquiry."  *Palakuru v. Renaud*, 521 F.Supp.3d 46, 51 (D.D.C. 2021).  That Ikapel's interview has not been scheduled, in contrast with Ebuu's interview, is partly a function of the fact that the plaintiffs submitted Ikapel's documents over two years after those of his brother.  Such circumstances do not warrant judicial intervention.

   ii. *TRAC* Factor 4

The fourth factor considers the effect of prioritizing one agency action over others.  *See TRAC*, 750 F.2d at 80.  Many courts find the fourth *TRAC* factor to "carr[y] the greatest weight." *Da Costa v. Immigr. Inv. Program Off.*, 643 F.Supp.3d 1, 15 (D.D.C. 2022), *aff'd*, 80 F.4th 330

(D.C. Cir. 2023) (citing *Milligan v. Pompeo*, 502 F.Supp.3d 302, 319 (D.D.C. 2020)).  In fact, "[t]his Circuit has refused to grant relief, even [when] all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain."  *Milligan*, 502 F.Supp.3d at 319 (quoting *Mashpee*, 336 F.3d at 1100) (alterations and quotations omitted).

This *TRAC* factor weighs in favor of the government.  Secretary Blinken asserts that granting the Oduor family members their requested relief would inappropriately "move . . . Ikapel's cases ahead of other pending cases."  Def. Mot. to Dismiss at 23.  Although the plaintiffs question the validity of this statement, Pls. Opp'n to Def. Mot. to Dismiss at 13, Dkt. 8 ("That is, if there is even a queue at all."), the Court has no such doubts; from a look at its own docket alone, the Court is well aware that other similar cases are, in fact, pending.  Accordingly, it would be "inappropriate" to allow Ikapel to jump ahead and reorder "the queue of applicants" because there would be no demonstrable "net gain" in visa processing at large.  *Tate*, 513 F.Supp.3d at 149.

        iii.    *TRAC* Factors 3 and 5

The third and fifth *TRAC* factors concern the "health and welfare . . . at stake" and "the interests prejudiced by delay."  *TRAC*, 750 F.2d at 80.  These favors, taken together, *see Didban v. Pompeo*, 435 F.Supp.3d 168, 177 (D.D.C. 2020), favor the plaintiffs.  The delay has caused Oduor to "miss out on critical years in the lives of his son[]," and the plaintiffs suffer from depression and anxiety as a result.  Pls. Opp'n at 14.  Oduor "worries constantly" about his son, and his anxiety "threatens to inhibit his work" in the medical sector.  *Id.* at 14–15.  Taking these alleged adverse effects as true, as the Court must, *see Iqbal*, 556 U.S. at 679, the Court determines

that the plaintiffs are in a worse position than visa applicants who merely claim that their lives have been put "on hold" by the visa delay, *e.g.*, *Palakuru*, 521 F.Supp.3d at 53.

        iv.     *TRAC* Factor 6

The final *TRAC* factor requires the Court to "determine whether the agency has acted in bad faith in delaying action." *Fakhimi v. Dep't of State*, 2023 WL 6976073, at *11 (D.D.C. 2023). This factor is neutral. The complaint does not allege bad faith, nor does the record show that the government has acted in bad faith.

Taken together, the *TRAC* factors favor Secretary Blinken. Indeed, the weightiest factors—one, two, and four—favor Secretary Blinken entirely. The Court thus concludes that the plaintiffs have failed to state a claim for unreasonable delay under the APA.

## CONCLUSION

For the foregoing reasons, the Court grants the defendant's Motion to Dismiss. A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

March 29, 2024